U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 APR 28 AM 8: 55

CLERK

BY pjl
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DARREN COUTURE, )
)
  Plaintiff, )
)
v. ) Case No. 5:14-cv-00220
)
SUE BLAIR, Director of the Vermont State )
Board of Parole; D. GEORGE, Vermont )
State Parole Board Hearing Officer; P. )
BOUCHER, Vermont State Parole Board )
Hearing Officer; and P. OZAROWSKI, )
Vermont State Parole Board Hearing Officer, )
)
  Defendants. )

**OPINION AND ORDER RE:
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
(Doc. 18)**

Plaintiff Darren Couture filed this 42 U.S.C. § 1983 action *pro se* against defendant parole board director and officers alleging constitutional violations arising from the revocation of his parole. Couture's most recent amended complaint (Doc. 24) alleges various due process violations as well as an equal protection claim. Defendants filed a motion to dismiss Couture's first amended complaint (Doc. 18) as well as a supplemental memorandum to dismiss Couture's second amended complaint. (Doc. 26.) For the reasons stated below, defendants' motion to dismiss is GRANTED.

  **I.**   **Background**

The court draws this account of the factual background of the case to the extent possible from Couture's pleadings, with help from the background sections of defendants' motion. (Docs. 3, 5, 18, 23, 24, 26, 27.) Couture is an inmate in the custody of the Vermont Department of Corrections ("DOC") and is currently incarcerated at the Northern State Correctional Facility in Newport, Vermont. He had been on parole release until March 20, 2014, when he was arrested for allegedly violating condition 5 of his parole agreement, which prohibited engaging in

1

"violent, threatening, or assaultive behavior." (Doc. 24 at 2.) The specific charge was that he slapped his daughter in the face. (*Id.*)

On April 1, 2014, the Vermont State Parole Board ("Parole Board") held a preliminary hearing. Defendants George, Boucher, and Ozarowski were the three hearing officers on the Board. (*Id.*) Couture alleges that without his knowledge or permission, his attorney waived his right to a hearing on the issue of probable cause, which limited the purpose of the hearing to determining whether Couture would be released on bail. (*Id.*)

Couture further alleges that his attorney failed to object to any evidence presented at the hearing, even though the evidence was fabricated. He claims that he said nothing at the hearing upon his attorney's advice. Couture explains that he was ultimately denied bail as a result of a "[F]acebook posting" and having contact with his ex-girlfriend. (*Id.* at 3.) This contact was found to have violated parole condition 20, which gave the parole office the authority "to restrict people he associate[d] with." (*Id.* at 4.) Couture's parole officer had previously restricted his association with his ex-girlfriend.

On April 2, 2014, Couture's parole officer, Barbara Quilliam, submitted a supplemental violation report alleging that he violated condition 20, described above, and condition 1 (which prohibited him from committing an act punishable by the law or in violation of a court order) in addition to condition 5, which had prompted the preliminary hearing. On May 1, 2014, Couture signed a form waiving his right to a parole revocation hearing. (*Id.*) Couture claims that he signed the waiver with the understanding that the allegations of the parole condition violations would be dropped; his parole would be revoked; he would receive a punitive sanction; and then he would be re-released on "Conditional Re-Entry." (*Id.*; Doc. 27 at 3.)

Despite the fact that Couture waived his right to a hearing, a parole revocation hearing took place on or before May 6, 2014. After the second hearing, the Parole Board revoked parole on the grounds that Couture violated condition 20 because he had maintained contact with his ex-girlfriend. Couture claims that he did so in order to pick up his daughter at his ex-girlfriend's request. Couture states that two Parole Board officers, George and Ozarowski, were present at the hearing, along with his attorney and his parole officer.

2

## II. Couture's Claims

Couture alleges eight numbered claims, which the court determines can be analyzed as two categories of claims arising under 42 U.S.C. § 1983. (Doc. 24 at 4-5; Doc. 27 at 4.)

First, Couture claims that various aspects of his parole revocation proceedings violated his right to procedural due process (numbered claims 1 through 8). He claims that defendants violated proper procedure as codified by Vermont law by: acting in an arbitrary and capricious manner; accepting the waiver of his right to a hearing when that waiver was not made "knowingly, intelligently, or voluntarily" (Doc. 24 at 5); revoking his parole on the basis of inadmissible, uncorroborated evidence which was unduly prejudicial; and being biased against him specifically and against criminals more generally. He alleges that condition 20 of his parole agreement—the violation of which led to his parole revocation—was unconstitutionally vague. He also claims that he received ineffective assistance of counsel at his parole hearings, which the court construes as an allegation of a due process violation. *See Clark v. Walsh*, No. 11-CV-44 (KMK), 2015 WL 1501457, at *2 (S.D.N.Y. Mar. 31, 2015) (noting ineffective assistance of counsel as potential ground for habeas petitioner's due process violation allegation).

Second, Couture alleges that his parole violation proceedings violated his rights under the Equal Protection Clause (numbered claim 1).

Couture's requested relief includes: a new parole revocation hearing held by a new Parole Board; an order dismantling the current Parole Board; an order directing the Vermont Legislature to establish a new Parole Board Directive; an order appointing new, unbiased Parole Board officials; and compensatory and punitive damages against each defendant. In his response to defendants' supplemental motion to dismiss, Couture further requests the court to "set aside [his] violation." (Doc. 27 at 13.)[1]

---

[1] Couture's response to defendants' supplemental memorandum to dismiss also newly requests the court to "[p]lace an order on current Board members and DOC to stop retaliating against [him] because of his litigation." (Doc. 27 at 13.) However, he makes no claim of retaliation in any of his complaints or in either of his responses to defendants' motion to dismiss. The court does not construe this new request for relief as a separate and additional claim.

3

### III. Motion to Dismiss Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but to survive a motion to dismiss it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a plaintiff has failed to "nudge[ ] [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, they must be dismissed.

The court must read a *pro se* complaint liberally, *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009), and must interpret any supporting papers "to raise the strongest arguments that they suggest." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (internal quotation omitted). Although "[p]ro se complaints are to be construed particularly liberally on a motion to dismiss," *Mitchell v. Keane*, 974 F. Supp. 332, 338 (S.D.N.Y. 1997) *aff'd*, 175 F.3d 1008 (2d Cir. 1999), they must nonetheless state a plausible claim for relief to survive a motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

### IV. Defendants' Arguments

As a threshold matter, the court notes that defendants argue in their motion to dismiss that Couture's complaint fails because it does not "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. 18 at 2); Fed. R. Civ. P. 8(a)(2). Couture's initial complaint is fifteen typed pages of mixed fact description and legal argument. Defendants' argument is rendered moot by the filing of Couture's second amended complaint. (Doc. 24.) As defendants acknowledge, when a court dismisses a complaint for failure to comply with the requirement that it be short and plain, it normally does so without prejudice, allowing the plaintiff leave to file an amended complaint. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Defendants' supplemental memorandum regarding their motion to dismiss— filed after Couture's second amended complaint was filed—does not revive this argument. The court therefore will not consider it.

4

## A. Sovereign Immunity

Defendants first argue that Couture's claims are barred by sovereign immunity to the extent they are alleged against defendants in their official capacities. (Doc. 18 at 4.) "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation omitted). It is settled that neither a state nor any entities that function as "arms of the state" may be sued under 42 U.S.C. § 1983. *Komlosi v. N.Y. State Office of Mental Retardation & Dev. Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (internal citations omitted). Nor has Vermont waived its sovereign immunity under § 1983. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act provision reserving "the rights of the State under the Eleventh Amendment"). Therefore, Couture's claims for damages pursuant to § 1983 are dismissed to the extent they are brought against defendants in their official capacities.

## B. Absolute Immunity

Defendants also argue that the Parole Board hearing officer defendants are absolutely immune from suit. (Doc. 18 at 8-9.) The Second Circuit has held that "parole board officials are absolutely immune from liability for damages when they decide to grant, deny, or revoke parole, because these tasks are functionally comparable to those of a judge." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (internal quotation and modifications omitted). Such immunity is important for parole board officers, whose ability to render impartial decisions would be impeded by fear of lawsuits. Immunity also preserves resources, because "parole board officials . . . may find themselves spending an inordinate amount of time and expense defending against baseless suits brought by disappointed parolees, thereby distracting parole board officials from their crucial duties in administering the state's penal system." *Id.* at 761. However, parole board officials are only entitled to absolute immunity from suit when performing adjudicative functions; "'the more distant a function is from the judicial process, the less likely absolute immunity will attach.'" *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (quoting *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990)).

According to Couture's second amended complaint, defendants Boucher, George, and Ozarowski conducted his preliminary hearing, and the latter two defendants conducted his parole

5

revocation hearing. (Doc. 24 at 1.) Determining whether to release a parolee on bail or to revoke a parolee's parole are quasi-judicial functions and not administrative ones. *See Hamilton v. New York City Mun.*, No. 9:11-CV-0348 (DNH/DEP), 2012 WL 398819, at *11 (N.D.N.Y. Jan. 10, 2012) (distinguishing administrative functions performed by chair of parole board from quasi-judicial functions performed by the parole board officials who make parole decisions).

Couture argues that defendants are not entitled to immunity because they intentionally violated his constitutional rights by holding the hearings themselves rather than allowing non-biased officials to do so. (Doc. 23 at 5-7.) However, "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive." *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004). Despite Couture's allegation of intentional conduct, defendants performed quasi-judicial functions to which absolute immunity attaches. *See Peay v. Ajello*, No. 3:03CV1887 (RNC), 2005 WL 2464653, at *1-2 (D. Conn. Sept. 28, 2005) (holding that defendant prosecutor and probation officer were entitled to absolute immunity despite plaintiff's allegation that they deliberately or intentionally violated plaintiff's rights); *Chitty v. Walton*, 680 F. Supp. 683, 686 (D. Vt. 1987) (concluding defendant correctional facility caseworkers were absolutely immune from suit relating to their preparation of report for parole board—despite plaintiff's allegation that they deliberately included false information in report—because preparing report was a quasi-judicial function). Defendants George, Boucher, and Ozarowski are entitled to the absolute immunity from damages available to parole board officials conducting quasi-judicial functions.

### C. Involvement of Defendant Blair

Defendants argue that Couture has failed to allege sufficient facts showing the personal involvement of defendant Blair, director of the Parole Board, in any of the alleged unlawful actions. (Doc. 18 at 7.) "Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to [her] liability on a claim for damages under § 1983." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal,

6

failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Couture's amended complaint states that a parole officer submitted a violation report to Blair. (Doc. 24 at 2.) He also alleges that "Blair has disassociated herself with all new supportive evidence that points to plaintiff['s] actual innocence[] which demonstrates her [a]rbitrary and [c]ap[r]icious actions towards plaintiff." (*Id.* at 10.) Attached to his original complaint is an email dated June 16, 2014 between Couture's lawyer and Blair regarding an apparent request by Couture for information from the Parole Board. (Doc. 3-15.) Blair writes: "You most likely have everything I have. I rarely get or have anything that you don't have. This is a tough one because he agreed to waive the PV hearing, before seeing all the info?? Can we talk about this please." (*Id.* at 2.)

Couture argues that these letters and emails sufficiently show Blair's involvement in the violations of his constitutional rights to render her liable under § 1983. (Doc. 23 at 5.) The email indicates that Blair was aware that Couture waived his right to a hearing without the benefit of all available information. This could give rise to an inference that Blair was informed of a potential constitutional violation and failed to act to correct it. (This is not the only possible inference, but it is the one most favorable to Couture.) Construing Couture's pleadings liberally, he has sufficiently alleged Blair's personal involvement in at least one act—the Parole Board hearing officers' acceptance of his allegedly uninformed hearing waiver—to survive defendants' motion to dismiss on the ground of personal involvement.

### D. The Equal Protection Claim

Defendants move to dismiss Couture's equal protection claim, to the extent his second amended complaint is construed to allege one, because he has failed to support the elements of the claim with factual allegations. (Doc. 26 at 4-5.) An equal protection claim must allege:

> (1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible

7

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). A plaintiff must allege that he was "treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

Other than including the words "Equal Protection" in his second amended complaint, Couture alleges no facts to support the claim. In his response to defendants' supplemental motion to dismiss, Couture argues that he "has shown that his treatment by the VT Parole Board was different than how other persons are treated" by defendants. (Doc. 27 at 11.) However, Couture does not allege that he was discriminated against on an unlawful basis, nor does he allege any facts relating to defendants' treatment of others similarly situated. His conclusory statement that he has sufficiently stated the claim—without having actually done so—is not sufficient to survive defendants' motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because Couture has not sufficiently alleged an equal protection claim, the claim is dismissed.

### E. The *Heck* Bar

Defendants finally argue that "[t]o the extent [Couture] is seeking immediate release from prison, or reinstatement of parole, the proper action would be a writ of habeas corpus." (Doc. 18 at 12.) In fact, to the extent Couture seeks those results all of his claims are barred.

The intersection of § 1983 and habeas corpus petitions has been outlined by the Supreme Court in three relevant cases. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court addressed the question of whether state prisoners seeking relief that would result in their release from prison could file an action under 42 U.S.C. § 1983 "even though the federal habeas statute, 28 U.S.C. § 2254, clearly provides a specific federal remedy." 411 U.S. at 477. In that case, state prisoners challenged the cancellation of "good-behavior-time credits" that they had amassed, and they requested the district court to restore them. *Id.* at 480. The Supreme Court concluded that the state prisoners' claim was not cognizable under § 1983, because such a claim falls "within the core of habeas corpus as an attack on the prisoner's conviction, for it goes

directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or shortening of its duration." *Id.* at 489. The Court held "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500.

The Supreme Court extended the holding in *Preiser* to damages claims by state prisoners where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Unless the plaintiff could show that the underlying conviction or sentence related to his damages claim had been invalidated, he had no cognizable claim under § 1983. *Id.* *Heck* bars § 1983 constitutional damages claims challenging "a determination which affects the overall length of [a state prisoner's] imprisonment." *Hannah v. Davis*, No. 08-CV-0116F, 2008 WL 516750, at *1 (W.D.N.Y. Feb. 25, 2008).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the plaintiff state prisoner requested a declaration that the procedures used by state officials to deprive him of good-time credits violated due process. *Edwards*, 520 U.S. at 643. He also sought damages and an injunction to prevent future due process violations. *Id.* The Supreme Court held that "[t]he principal procedural defect complained of by [Balisok] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646. All of Balisok's claims were *Heck*-barred except his "claim for an injunction barring *future* unconstitutional procedures." *Id.* at 81.

Together, *Preiser*, *Heck*, and *Edwards* prohibit a state prisoner plaintiff from pursuing injunctive, declaratory, or monetary relief under § 1983 where his claim challenges, directly or indirectly, the validity of his incarceration. *See Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 201 (S.D.N.Y. 2004). A claim challenging the validity of a state prisoner's parole revocation on due process grounds is such a claim. *See Byrne v. Trudell*, No. 1:12-cv-245-jgm-jmc, 2013 WL 2237820, at *23 (D. Vt. May 21, 2013).

Couture claims that his parole revocation proceedings fell short of due process requirements in various respects, and he seeks another hearing conducted by unbiased parole

9

board officers. He does not challenge the codified parole board procedures themselves. He also argues that the parole condition he was found to have violated was unconstitutionally vague such that he could not be expected to know the specific behavior it prohibited. "The gravamen" of Couture's allegations "is that his parole was wrongly and unconstitutionally revoked." *Jude v. New York State*, No. 07 Civ. 5890(RJS), 2009 WL 928134, at *8 (S.D.N.Y. Mar. 30, 2009). Further, his response to defendants' supplemental motion to dismiss adds a request that the court "set aside" the Parole Board's finding that he violated a condition of his parole. (Doc. 27 at 13.) His claims essentially challenge the validity of his parole revocation, *see id.*, and he thus "challenges the very fact or duration of his physical imprisonment." *Preiser*, 411 U.S. at 500.

Because they challenge the validity of his parole revocation, Couture's claims for injunctive relief are not cognizable under 42 U.S.C. § 1983. *See Bodie*, 342 F. Supp. 2d at 201 (dismissing § 1983 complaint alleging due process violations arising from parole denial because the complaint "directly implicate[d] the validity of [plaintiff's] continued incarceration"). "Even if the Court were empowered to grant such relief, an order reversing a parole determination would necessarily be based upon the harm to [Couture] in having his parole [revoked], and therefore would be a challenge to the fact or duration of his confinement." *Mathie v. Dennison*, No. 06 Civ. 3184(GEL), 2007 WL 2351072, at *4 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 381 F. App'x 26 (2d Cir. 2010) (internal quotations omitted).

For the same reason, Couture's claims for compensatory and punitive damages against all defendants are *Heck*-barred. *Heck* bars damages claims under § 1983 based on a state prisoner's challenge to his parole revocation. *See Lee v. Donnaruma*, 63 F. App'x 39, 40-41 (2d Cir. 2003) ("Most of Lee's claims challenge the procedures which culminated in the revocation of his parole, and thus, necessarily constitute a challenge to the validity of the revocation of the parole itself. Such a challenge is barred by the Supreme Court's decision in *Heck* . . . ."). Nor has Couture alleged that his underlying conviction has been invalidated. *See Bodie*, 342 F. Supp. 2d at 201.

Couture argues that his claims are not completely barred because he challenges state parole procedures. (Doc. 23 at 4.) He points toward *Wilkinson v. Dotson*, in which the Supreme Court distinguished claims that seek "release from confinement or a shorter stay in prison" from claims that "mean[] at most a new parole hearing at which . . . parole authorities may, in their

10

discretion, decline to shorten [a plaintiff's] prison term." 544 U.S. 74, 82 (2005). While the former claims would be *Heck*-barred, the latter would be cognizable under § 1983.

The state prisoners in *Wilkinson* claimed that Ohio's state parole procedures violated the *Ex Post Facto* and Due Process Clauses of the Federal Constitution. 544 U.S. at 77-78. They requested declaratory relief and an injunction preventing the future application of the allegedly unconstitutional guidelines. The court found the Ohio state prisoners' claims distinguishable from those barred by *Heck* because they sought "relief that [would] render invalid the state procedures used to deny parole eligibility . . . and parole suitability." *Id.* at 82. Because the state prisoners' claims in *Wilkinson* would not "necessarily spell speedier release, neither [lay] at 'the core of habeas corpus.'" *Id.*

It is therefore true that Couture's claims would not be *Heck*-barred to the extent he requests injunctive relief against Vermont's future application of parole revocation guidelines that violate Fourteenth Amendment due process. *See also Mathie*, 2007 WL 2351072, at *3 ("Although *Heck* bars plaintiff's suit insofar as he is seeking damages, to the extent plaintiff is challenging the procedures used by the Parole Board, his suit is not *Heck*-barred.") (internal quotation omitted).

The problem with Couture's argument is that he does not claim that any of the Vermont state parole procedures violate the Federal Constitution. His requests for relief include an order directing the Vermont Legislature to re-write parole guidelines, implying that he considers they are procedurally deficient in some respect. However, Couture's complaints, even liberally construed, do not allege that any part of the guidelines does not meet the minimum requirements for parole revocation proceedings outlined by the Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 484-90 (1972). His complaints focus not on the constitutional insufficiency of Vermont's parole procedures but on the alleged failure of the Parole Board officers who revoked his parole to follow them. (*See* Doc. 27 at 8.) Couture's claims, unlike those of the state prisoners in *Wilkinson*, "fall within the implicit habeas exception" to claims that are cognizable under § 1983. *Wilkinson*, 544 U.S. at 82; *see also Edwards*, 520 U.S. at 643 (holding all of state prisoner's claims *Heck*-barred except for claim for injunctive relief that procedures used by state officials in depriving state prisoners of good-time credits violated Fourteenth Amendment due process); *Jude*, 2009 WL 928134, at *8-9 (distinguishing state prisoner plaintiff's claim that his

constitutional rights were violated during parole revocation proceedings from surviving claims in *Wilkinson* and *Edwards*).

Because Couture's claims attack the validity of his parole revocation, they are not cognizable under § 1983. Couture makes no claim that survives the *Heck* bar because he does not allege that Vermont's parole revocation procedures are constitutionally deficient. Couture's remaining claims against defendants in their individual capacities and his remaining claims for injunctive relief are dismissed.

## V. Conclusion

Because all defendants are entitled to sovereign immunity to the extent sued for damages in their official capacities; defendant Parole Board hearing officers are entitled to absolute immunity to the extent sued for damages; plaintiff has failed to state an equal protection claim; and plaintiff's claims are not cognizable under 42 U.S.C. § 1983 pursuant to the *Heck* line of cases, defendants' motion to dismiss the complaint and amended complaints is GRANTED.

Dated at Rutland, in the District of Vermont, this 28th day of April, 2015.

Geoffrey W. Crawford, Judge
United States District Court